IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PHILIP M. CALOIA-FULLERTON,

    Claimant,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 14-1449 (MEL)

**OPINION AND ORDER**

I.   PROCEDURAL AND FACTUAL BACKGROUND

Philip M. Caloia-Fullerton ("claimant") was born on February 14, 1960, and has a high school education (Tr. 86.) On December 22, 2010, claimant applied for Social Security disability insurance benefits ("DIB"), alleging disability on the basis of sensorineural hearing loss, dizziness, and HIV infection. (Tr. 86, 177.) In his application for DIB, claimant alleged that he had been disabled since November 26, 2006. Id. The date last insured was December 31, 2011. (Tr. 158.) Prior to his initial application for DIB, claimant worked as a welder and as a department store stock clerk. (Tr. 34.) Claimant's application was denied initially on May 13, 2011, and again upon reconsideration on January 20, 2012. (Tr. 52.) The Administrative Law Judge ("ALJ") held a hearing on January 17, 2013 at which claimant amended the alleged onset date of his disability to June 1, 2010. (Tr. 15, 31, 102.) Claimant waived his right to appear and testify at the hearing, but he was represented by counsel, and a vocational expert ("VE") testified by telephone. (Tr. 30.) On April 5, 2013, the ALJ rendered a decision, finding that claimant was not disabled from June 1, 2010 through December 31, 2011. (Tr. 16.) The Appeals Council denied claimant's request for review on April 9, 2014. (Tr. 1.) Therefore, the ALJ's opinion

became the final decision of the Commissioner of Social Security (the "Commissioner" or "defendant"). Id.

On June 5, 2014, claimant filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706. ECF No. 1, ¶ 2.[1] Defendant answered and filed a certified transcript of the administrative record. ECF Nos. 11-12. Both claimant and the Commissioner have filed supporting memoranda of law. ECF Nos. 17; 23.

## II. STANDARD OF REVIEW

The Social Security Act (the "Act") provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's decision must be upheld if the court determines that substantial evidence supports the ALJ's findings, even if a different conclusion would have been reached by reviewing the evidence *de novo*. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Commissioner's fact findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

An individual is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the ALJ concludes that the

---

[1] On September 20, 2007 (prior to the alleged onset date of disability) claimant was examined by internal medicine specialist Dr. Fernando Torres Santiago ("Dr. Torres") and diagnosed with bipolar disorder by history and an HIV infection. (Tr. 270–71.) Claimant did not appeal the ALJ's findings with regard to either bipolar or HIV.

claimant's impairment or combination of impairments do prevent him from performing past relevant work, the analysis then proceeds to step five. At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[2] combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g). Under steps one through four, the claimant has the burden to prove that he cannot return to his former job because of his impairment or combination of impairments. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). Once he has carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the claimant can perform." Id.

### III. SUMMARY OF MEDICAL EVIDENCE

On June 4, 2010, Dr. Mark T. McDowall ("Dr. McDowall") performed an audiology exam on claimant. (Tr. 324.) Claimant complained of hearing loss and tinnitus following a "cerumen extraction" in 2007. Id. Additionally, claimant reported that later he had experienced episodes of positional vertigo with nausea and emesis (vomiting). Id. Regarding claimant's right ear, the examination found profound-to-moderate sensorineural hearing loss, severe loss of hearing for purposes of communication, poor discrimination ability, significant decay in stimulation, and optoacoustic emissions consistent with reduced cochlear function. Id. With respect to claimant's left ear, the tests found mild sensorineural hearing loss, mild loss of hearing for the purposes of communication, and excellent discrimination ability. Id. Both ears showed good mobility of the tympanic membrane and normal middle ear pressure. Id. Dr. McDowall

---

[2] An individual's RFC is the most that he can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1).

recommended hearing aid counseling as well as a full tinnitus workup including an auditory brainstem response ("ABR") evaluation and videonystagmography ("VNG"). Id.

The recommended workup was conducted on June 23, 2010, by audiologist Dr. Luz E. Rivera López ("Dr. Rivera"). The ABR indicated claimant had a normal auditory brainstem response and did not have retrocochlear pathology. (Tr. 312.) The VNG revealed claimant had a right caloric unilateral weakness consistent with a right peripheral, vestibular lesion. (Tr. 313.) Further consistent with such a lesion, the report indicated, claimant had a low intensity, left beating and moderate intensity down beating position nystagmus. Id.

On March 30, 2011, consultive physician Dr. Nilda Rosado Villanueva ("Dr. Rosado") examined the claimant, who's chief complaints were dizziness and tinnitus since 2007. (Tr. 284.) Claimant reported that the dizziness events were related to motion and position, occurred two to four times a week, and were accompanied by nausea and vomiting. Id. Claimant further reported experiencing hearing loss since the 1990s. Id. The HIV diagnosis was also disclosed to Dr. Rosado, and claimant indicated he was in strict compliance with his therapy. Id. Claimant did not disclose, however, any psychiatric history or any joint pain. (Tr. 285.) In the physical examination, Dr. Rosado noted tinnitus and hearing deficit, but clear ear canals, no abnormal discharge, and adequate regular tone. Id. Dr. Rosado indicated that at the moment of the exam claimant had no limitation with regards to gait, sitting, standing, or getting up and down from the examination table. (Tr. 287.) Dr. Rosado listed the prognosis as guarded and diagnosed claimant with hearing deficit and as HIV positive. Id.

On May 11, 2011, Dr. Eileen Zayas ("Dr. Zayas") completed a RFC evaluation. (Tr. 294.) Dr. Zayas listed claimant's primary diagnosis as sensorineural hearing loss, and his secondary diagnosis as HIV positive. Id. Dr. Zayas found no exertional, postural, manipulative,

or visual limitations. (Tr. 295-97.) Dr. Zayas found claimant had a hearing limitation, and that, due to claimant's sensorineural hearing loss he needed to avoid even moderate exposure to noise and vibrations. (Tr. 298.)

On March 12, 2012, Dr. Heriberto Cintrón Ortiz ("Dr. Cintrón") an ENT and otolaryngologist provided a report regarding the claimant's impairments. (Tr. 309.) Dr. Cintrón indicated that claimant had visited his office twice.[3] Id. One of claimant's visits—on June 3, 2011—was during the period of disability insurance; however, his second visit was on January 27, 2012, after claimant's last insured date of December 31, 2011.[4] Id. Claimant reported severe deafness in the right ear, tinnitus, vertigo, nausea, and vomiting, aggravated by head movements, bending, loud noises, and altitudes. Id. The tinnitus and vertigo were also aggravated by mandibular pain, which was made more frequent by chewing (particularly hard foods like nuts) and "jawing." (Tr. 300-10). According to Dr. Cintrón, the attempted treatments resulted in little improvement, if any. (Tr. 300.)  Dr. Cintrón noted no present evidence of mental illness or emotional disturbances, but he noted that such concerns could be present in the future if not treated property and previous treatment should be continued indefinitely. (Tr. 311.) In reliance on a basic office examination and the reports of Dr. McDowell and Dr. Rivera, claimant was diagnosed with cochlear lesions that caused severe right profound deafness and moderate left deafness, mainly positional vertigo, and temporomandibular joint pain.  (Tr. 310.) Dr. Cintrón listed the onset of diagnosis as 2007. (Tr. 310.) With regards to limitations, Dr. Cintrón

---

[3] Claimant was not treated by Dr. Cintrón, but rather another otolaryngologist who is now retired due to sickness. Neither party nor the ALJ argued that this affected the weight that should be given Dr. Cintrón's findings.

[4] Neither party nor the ALJ take issue with the fact that one of the visits took place after the date last insured. Dr. Cintrón's report does not clarify which findings resulted from the first visit and which stemmed from the second visit. The mere fact that one visit occurred after the last insured date is not dispositive, because "[m]edical evidence generated after a claimant's insured status expires may be considered for what light (if any) it sheds on the question whether claimant's impairment(s) reached disabling severity *before* claimant's insured status expired." Moret Rivera v. Sec'y of Health and Human Services, 19 F.3d 1427 (1st Cir. 1994) (per curium) (unpublished table opinion). Here, although Dr. Cintrón potentially relied on an office examination after the last insured date, he also relies on reports of clinical testing done by Dr. McDowell and Dr. Rivera that all occurred before this date.

concluded that claimant was restricted in his ability to climb stairs, bend, and his viso-motor coordination and bi-manual skills are affected during vertiginous spells. (Tr. 311.) Dr. Cintrón further reported that claimant was environmentally restricted in noisy areas, altitudes, and areas contaminated by smoke and chemicals. Id. Dr. Cintrón specified that during an eight hour shift, claimant would require more than three to four rest periods of at least one hour each. Id.

IV. **ANALYSIS**

Claimant alleges that the ALJ omitted the functional limitations of dizziness and joint pain from the RFC and hypothetical to the vocational expert, failed to give controlling weight to his treating physician without good cause, failed to fully develop the record, and misunderstood the medical terminology. See ECF No. 17.

**A. Evaluation of Dizziness Claim**

Claims of dizziness should be analyzed using the same framework as pain and other subjective symptomology. Santiago-Santiago v. Secretary of Health and Human Services, 756 F.Supp. 74, 77 (D.P.R. 1991); Ross v. Astrue, Civ. Action No. 09-11392-DJC, 2011 WL 2110217, *10 (D. Mass. May 26, 2011). "Like pain, allegations of dizziness which derives from some medically definable source can be divided into two basic categories: 1) dizziness that derives from an 'objective' source, in that there exists a verifiable medical condition which would explain and be consistent with the level dizziness complained of, and 2) dizziness that derives from an 'objective' source, but is more severe than would be expected from the existent medical condition." Santiago-Santiago, 756 F.Supp. at 77; see also Thompson v. Califano, 556 F.2d 616, 618 (1st Cir. 1997) (holding claimant failed to show that her impairment based on dizziness was medically determinable when the record had only one mention of dizziness due to a subsequently treated middle ear disease, and claimant asserted that her dizziness was being caused by diabetes that was being treated). Once the claimant establishes that he has a clinically

determinable impairment that can reasonably be expected to produce dizziness, the dizziness cannot be discounted merely because the severity is not corroborated by objective medical findings. See Carbone v. Sullivan, 960 F.2d 143, 5 (1st Cir. 1992) (unpublished). The ALJ then must look to following considerations, known as the Avery factors: (1) claimant's daily activities; (2) location, duration, frequency and intensity; (3) factors that precipitate or aggravate symptoms; (4) type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, taken to relieve the symptoms; (6) any measures other than treatment that the individual uses or has used to relieve the symptoms (e.g., lying flat on his back); and (7) any other factors concerning functional limitations and restrictions due to the symptoms. See Vargas-López v. Comm'n of Social Security, 510 F.Supp.2d 174, 180-81 (D.P.R. 2007) (citing Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir. 1986)).

Here, the ENT (ear, nose, and throat specialist), Dr. Cintrón, found that claimant's vertigo was consistent with a severe cochlear lesion, but the ALJ did not include any dizziness-related limitations in the RFC. (Tr. 309.) The ALJ stated "it is difficult to attribute" claimant's degree of limitation due to dizziness to his medical condition "in view of the relatively weak medical evidence." (Tr. 22.) As this finding is related to the severity of the dizziness rather than the veracity of the underlying medical condition, it triggered the requirement to examine the Avery factors. The ALJ extensively addressed the first factor and briefly addressed the second. The sixth factor was also somewhat addressed because the ALJ noted multiple times that claimant indicated he would need to lie down when he experienced dizziness spells. (Tr. 21-22.) The ALJ failed to address, however, the treatments claimant has used and the precipitating or aggravating factors.

These considerations are not wholly absent by the record, but rather they go unexamined by the ALJ. Dr. Cintrón's report identified three medications used to treat claimant's vertigo (Vertin 32, Lipovlavovit, and Vertigogel), but that "only a little transitory improvement" was seen in response to the medications. (Tr. 309.) Claimant's explanations of precipitating and aggravating symptoms are noted in Dr. Cintrón, Dr. Rosado, and claimant's disability paperwork. Dr. Cintrón reported the vertigo being aggravated by mandibular pain, head movements, loud noises, altitudes, and areas contaminated by smoke or chemicals. (Tr. 309-11.) In claimant's clinical history, Dr. Rosado noted that claimant's dizziness gets worse with "motion or changes to body position." (Tr. 284.) Claimant's disability reports indicate that the dizziness is worse when he bends, makes sudden movements, or is in the car. (Tr. 198, 204, 206.)

### B. Assignment of Weight and Development of the Record

In excluding claimant's dizziness from the RFC finding, the ALJ gave little weight to the opinion of treating physician, Dr. Cintrón, except to the extent that it is consistent with the remaining record. Id. Claimant objects to the RFC finding based on the ALJ not giving controlling weight to the treating physician and disregarding of claims of vertigo and mandibular joint pain. "Generally, the ALJ gives more weight to the opinions from the claimant's treating physicians, because these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments.'" Berríos Vélez v. Barnhart, 402 F.Supp.2d 386, 391 (D.P.R. 2005) (citing 20 C.F.R. § 404.1527(d)(2)). To be given controlling weight, the treating physician's opinion must be "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] record.'" Polanco-Quiñones v. Astrue, 477 Fed. App'x, 745, 746 (1st Cir. 2012) (quoting 20 C.F.R. § 404.1527(d)(2)). "The opinion of such a treating physician

can be rejected if it is inconsistent with other substantial evidence in the record." Agostini-Cisco v. Comm'r of Soc. Sec., 31 F.Supp.3d 342, 347 (D.P.R. 2014).

The ALJ concluded that the findings of claimant's ENT, Dr. Cintrón, were "unexplained and unsupported by the medical evidence." (Tr. 20.) Specifically, although Dr. Cintrón indicated that this assessment was based on an examination and multiple tests, the ALJ stated that "he did not provide the evidence with actual clinical signs and findings, or the results of the objective tests that support or reveal the vertigo or the limitations reported." (Tr. 21). Dr. Cintrón did attach to his findings, however, three objective tests: an ABR report, a VNG report, and an audiology report. (Tr. 312-27.) The VNG report from June 23, 2010 listed findings "consistent with a right peripheral (nerve or end organ), vestibular lesion." (Tr. 313.) In interpreting these findings, Dr. Cintrón noted that claimants' vertigo was elicited by this severe cochlear lesion. (Tr. 309.)

The ALJ determined that this conclusion by Dr. Cintrón was inconsistent with the findings of Dr. Rosado. (Tr. 20-21.) The ALJ noted that Dr. Rosado examined the claimant on March 30, 2011, months after the VNG testing, and found clear ear canals, no evidence of abnormal discharge, adequate tone, and grossly intact motor function. (Tr. 21.) Nothing in Dr. Rosado's report, however, indicates that these observations are inconsistent with either the test's finding of nerve damage or Dr. Cintrón's conclusion that such damage could cause vertigo. As a lay person, the ALJ is not qualified to interpret the raw data in the medical record, but rather must rely on physician's opinions to turn that data into functional terms. See Pérez v. Sec'y of Health & Human Servs., 958 F.2d 445, 446 (1st Cir. 1991); Valentín-Rodríguez v. Comm'r of Soc. Sec., No. 12-CV-1488 MEL, 2014 WL 2740410, at *7 (D.P.R. June 17, 2014); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). Further,

although the ALJ states that Dr. Rosado referred to "the audiology report," the report she relied on was dated May 2010. (Tr. 284.) No audiology report from May 2010 is part of this record. The only remaining contradiction with Dr. Cintrón's findings was, as the ALJ notes, that he listed the diagnosis onset for the hearing loss, vertigo, and temporomandibular joint pain as 2007. Claimant, however, was not actually treated at his office until 2011, and the physician who did see claimant in 2007, Dr. Torres, reported that he specifically denied blurred or double vision or hearing loss. (Tr. 269, 309-310.)

## V.    CONCLUSION

Because Social Security proceedings are not adversarial in nature, the Commissioner, through the ALJ, has a duty to develop an adequate record on which reasonable conclusions may be based. See Heggarty v. Sullivan, 947 F.2d 990, 998 (1st Cir. 1991); Hatcher v. Colvin, Civ. No. 13-1847 (CVR), 2014 WL 5511394 (D.P.R. Oct. 31, 2014). Here the ALJ acknowledged that the "medical evidence in this case is very limited." (Tr. 19.) The ALJ then omitted any dizziness related limitations from claimant's RFC finding because, in her view, Dr. Cintrón's conclusion was "unexplained and unsupported" and claimant's own descriptions of the dizziness was difficult to attribute to his medical condition because of "the relatively weak medical evidence." (Tr. 19-22.) The ALJ denied claimant's request for a subpoena to compel the appearance at the hearing of a state agency medical consultant. While this testimony itself is not necessary, the ALJ is obligated to further develop the record when she is alerted to the presence of an issue. Santiago v. Sec'y of Health and Human Services, 944 F.2d 1, 6 (1st Cir. 1991).

After carefully considering the record as a whole, we cannot conclude that the ALJ fully examined the Avery factors or developed the record regarding the consistency of claimant's dizziness with the underlying medical condition. Failure to do so in this instance constitutes the requisite "good cause" for remand pursuant to 42 U.S.C. § 405(g). This remand does not dictate

any outcome with regard to the final finding of disability. Therefore, the Commissioner's decision is **VACATED** and the case is hereby **REMANDED** for further proceedings consistent with this opinion.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 5th of February, 2016.

s/Marcos E. López<br>
U.S. Magistrate Judge